**Helen B. DONALDSON et al.**

v.

**Joseph HOVANEC et al.**

**Civ. A. No. 76–3088.**

United States District Court, E. D. Pennsylvania.

June 27, 1979.

James C. Brennan, Hinkson & Brennan, Chester, Pa., for plaintiffs.

Axel A. Shield, II, Asst. Atty. Gen., Commonwealth of Pennsylvania, Philadelphia, Pa., for Pennsylvania State Police.

Thomas R. Cunningham, White & Williams, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

This is a Civil Rights case in which plaintiff contends that her husband's tragic death resulted from unconstitutional conduct on the part of the named defendants, for which conduct she seeks damages. All defendants seek dismissal or summary judgment.

## FACTS

Plaintiff's decedent, Matthew Donaldson, was traveling eastward on the Pennsylvania Turnpike (the Turnpike) on October 7, 1975, at approximately 6:50 P.M., at which time he was stopped by defendant State Trooper Joseph Hovanec for the reason that Donaldson had been traveling at the rate of sixty-six (66) miles per hour, which speed was in excess of the fifty-five mile per hour speed limit posted at that time. Hovanec immediately issued a citation for this alleged motor vehicle code violation. Subsequently, Hovanec charged Donaldson with resisting arrest and took him into custody. Hovanec then contacted defendant Trooper Franklin Albright, and they met at the Morgantown Interchange of the Turnpike. From there, they proceeded to District Justice George Wenger's Magistrate Court, wherein a complaint was issued charging Donaldson with resisting arrest, and an additional charge of speeding was filed. Bail was set at $500.00 for resisting arrest and $20.00 for speeding. Donaldson paid these sums by check and was released.

As Donaldson was being returned to his vehicle, he complained of severe pains in his chest and arms. Defendants drove him to the Reading Hospital, in West Reading, Pennsylvania. There he collapsed from a myocardial infarction, and died at 11:07 P.M.

## PROCEDURAL HISTORY

Plaintiff filed a complaint alleging that the arrest was in violation of decedent's rights as secured by the Fourteenth Amendment and 42 U.S.C. §§ 1983, 1985, 1986 and 1988. Jurisdiction has been averred under 28 U.S.C. §§ 1331 and 1343. The complaint alleges that Hovanec acted unconstitutionally in that the arrest was improper and unnecessary, and was accomplished through the use of excessive force. The complaint also charges Albright with abusive and unconstitutional conduct and with conspiring with Hovanec to deprive Donaldson of his civil rights. Count 3 of the complaint then alleges that all remaining defendants, Henry Stabler, Newton Robbins and James Barger, and the Pennsylvania State Police (the State Police defendants), and Egidio Cerilli, Jack Greenblatt, Ray Bollinger and Peter Camiel and the Pennsylvania Turnpike Commission (the Turnpike defendants) are liable in their supervisory capacities. Plaintiff also alleges a claim under the laws of Pennsylvania, pursuant to this Court's pendent jurisdiction, for both negligent and wilful conduct resulting in the death of plaintiff's decedent.

The Turnpike defendants first moved for dismissal, and plaintiff responded. In her response, plaintiff stated that "Plaintiff abandons her claims under 42 U.S.C.A. §§ 1985 and 1986." Subsequently, the State Police defendants filed a motion to dismiss or for summary judgment. This motion was accompanied by an affidavit by Hovanec, around which much of the controversy of this case centers. In her response, plaintiff agreed that defendant Pennsylvania State Police, as opposed to the individual State Police defendants, was immune to liability pursuant to *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), and stated that she did not oppose the motion of that defendant to dismiss. Subsequently, there was an additional memorandum submitted by all the State Police defendants, and that was accompanied by a supplemental affidavit by Hovanec; after that, numerous other memoranda have been filed by the parties asserting various legal contentions.

There emerged from these various contentions two procedural obstacles. The first concerned plaintiff's actions against the supervisory defendants, that is, all defendants except Hovanec and Albright. Plaintiff alleged in Count III that the supervisory defendants violated the decedent's civil rights by:

"a. Selecting and/or retaining the Defendants Hovanec and Albright for service in the Pennsylvania State Police and Defendant Pennsylvania Turnpike Commission;

b. Assigning the said Defendants to patrol the Pennsylvania Turnpike as

shared employees with Defendant Pennsylvania Turnpike Commission;

c. Failing to identify the Defendants Hovanec and Albright as persons likely to engage in abusive and unconstitutional conduct towards citizens.

d. Failing to review adequately the personal and employment histories of said Defendants and their activities as shared employees of Defendants Pennsylvania State Police and Pennsylvania Turnpike Commission.

e. Failing to prevent such abusive and unconstitutional conduct towards citizens such as decedent by placing said Defendants in positions within Defendant Pennsylvania State Police and/or Defendant Pennsylvania Turnpike Commission where they could not have had the opportunity to engage in such abusive and unconstitutional conduct;

f. Failing to require reassignment of said Defendants so that they could not have had the opportunity to engage in abusive and unconstitutional conduct towards users of the Pennsylvania Turnpike.

g. Failing to provide adequate instruction and training to the Defendants Hovanec and Albright in the purpose and scope of their authority, in the proper procedures to enforce the traffic rules and regulations of Defendant Pennsylvania Turnpike Commission, and the traffic and criminal laws of the Commonwealth of Pennsylvania, and in the proper procedures to uphold the name and reputation of Defendants Pennsylvania State Police and Pennsylvania Turnpike Commission."

Plaintiff thus alleged that there was evidence in the employment records of Hovanec and Albright indicating that they were of vicious dispositions and very likely to resort to violence. Plaintiff asserted that this information was in the possession of the supervisory defendants, and that they had knowledge of such violent tendencies, but acquiesced in the alleged wrongdoing by not denying these troopers the opportunity to abuse users of the Turnpike. The State Police defendants refused to release the records of the two troopers absent a court order.

The Court resolved the issue by conducting an *in camera* inspection of all materials in the files of Troopers Hovanec and Albright that were in possession of the State Police prior to October 7, 1975. After completing the inspection, the Court made the following findings and issued the following statement to counsel and the parties:

"This is to advise that, pursuant to agreement of counsel, we have examined, in camera, the complete personnel files in the possession of the Pennsylvania State Police pertaining to Joseph Hovanec and Franklin Albright handed to us by Sergeant Thomas J. Hannus, Bureau of Personnel, including reports, records, writings, notes, memoranda and other data pertaining to citizens complaints, claims of alleged misconduct, internal discipline and disciplinary measures and procedures, internal and other disciplinary charges, sanctions and penalties imposed, if any, traffic arrest records and custodial arrest histories as to which citizens complaints were filed or received and other information contained in said personnel files and we find and conclude that there are no facts or information therein which is or are legally relevant to the plaintiffs' complaints and no facts or information therein which would constitute possible notice to supervisory personnel that the defendants had engaged or were likely to engage in violent or unconstitutional conduct in the making of arrests or in otherwise discharging their duties as police officers."

The remaining obstacle to consideration of the motions filed concerned the Hovanec affidavit. Plaintiff responded to this affidavit by contending that Hovanec was incompetent to testify, by affidavit or at trial or in any other context, because the Pennsylvania Dead Man's Act, 28 P.S. § 322, rendered his testimony inadmissable as it

concerned any dealings between himself and the decedent. Plaintiff further contended, in one of her memoranda, that she had independent evidence of the events of October 7, 1975, which evidence consisted of handwritten notes of the decedent describing his version of the incident, these notes having been written after the arrest and before admission to Reading Hospital. Plaintiff alleged that she had not submitted such notes due to her concern that such submission might amount to a waiver of her assertion that the Pennsylvania Dead Man's Act rendered Hovanec incompetent.

This obstacle was resolved through a stipulation entered into by all counsel that plaintiff would be permitted to submit to the Court any handwritten notes of decedent for purposes of opposing the State Police defendants' motion for summary judgment without waiving the Act and her rights to object to the admissability of the Hovanec affidavit or any testimony by Hovanec in any hearing. All other parties reserved the right to make legal objection to any testimony, affidavit or evidence presented either on motion or at trial.

Pursuant to this stipulation, plaintiff submitted an affidavit of Matthew Donaldson, Jr., son of the decedent and co-counsel for plaintiff, to authenticate the notes as having been written by the decedent. Along with this affidavit plaintiff submitted photostatic copies of the notes. Subsequently, the parties again submitted memoranda asserting various contentions dealing with, *inter alia*, the issue as to what notes, considered with the Hovanec affidavits, give rise to genuine issues of material fact.

Plaintiff represented in one of her subsequent memoranda that she was waiving her rights to invoke the Pennsylvania Dead Man's Act. She also revoked her earlier agreement that the Pennsylvania State Police were immune to liability under the Eleventh Amendment, and this elicited responses from all defendants. Now that all memoranda have been submitted and all procedural hurdles have been cleared, the motions pending before this Court are ripe for disposition.

## LIABILITY OF THE SUPERVISORY DEFENDANTS

In an action under 42 U.S.C. § 1983, a supervisory official is only liable if he is personally involved in the alleged wrongdoing. *Goode v. Rizzo,* 506 F.2d 542 (3d Cir. 1974), reversed on other grounds, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Hampton v. Holmesburg Prison Officials,* 546 F.2d 1077 (3d Cir. 1976); *Via v. Cliff,* 470 F.2d 271 (3d Cir. 1972); *Bracey v. Grenoble,* 494 F.2d 566 (3d Cir. 1974); *Coggins v. McQueen,* 447 F.Supp. 960 (E.D.Pa. 1978); *Fialkowski v. Shapp,* 405 F.Supp. 946 (E.D.Pa.1975); *Wilkerson v. Mock,* 403 F.Supp. 971 (E.D.Pa.1975). An official in a supervisory position cannot be liable for the conduct of his subordinates merely under a theory of vicarious liability based on *respondeat superior*. See *Goode v. Rizzo, supra; Hampton v. Holmesburg Prison Officials, supra.* To be liable, a supervisory official must either direct the wrongful conduct or have actual knowledge of the wrongdoing and acquiesce in it. See *Via v. Cliff, supra,* at p. 276. Such acquiescence can be inferred from a history of episodes indicating the supervisory official had actual knowledge of the wrongdoings. *Bracey v. Grenoble, supra; Wright v. McMann,* 460 F.2d 126 (2d Cir. 1972), *cert. denied,* 409 U.S. 885, 93 S.Ct. 115, 34 L.Ed.2d 141 (1972); *Johnson v. Glick,* 481 F.2d 1028 (2d Cir. 1973), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 32 (1973). An official who knows of an incident and fails to take steps to prevent a recurrence can be found to be liable under § 1983. *Marvasi v. Shorty,* 70 F.R.D. 14 (E.D.Pa.1976); *Curtis v. Everette,* 489 F.2d 516 (3d Cir. 1973). There is authority that if a superior official is aware of a history of complaints against a subordinate that indicate a violent propensity in the subordinate, and the superior official fails to take steps to control the subordinate, the superior may be liable under § 1983. *Moon v. Winfield,* 368 F.Supp. 843 (N.D.Ill.1973); *Sims v. Adams,* 537 F.2d 829 (5th Cir. 1976).

In the instant case, none of the supervisory defendants are subject to liability

under any of these principles. The Hovanec affidavit establishes that he stopped Donaldson because he detected on his radar that Donaldson was speeding. There is nothing in the record indicating that any of the supervisory defendants were aware that the incident was occurring. The Hovanec affidavit establishes that Hovanec was in fact acting on his own. Thus, Hovanec's actions with reference to the decedent were not directed by any of the supervisory defendants, nor did any of the supervisory defendants have actual knowledge of the specific incident prior to its occurrence or immediately thereafter. The Hovanec affidavit declares that radar detection was his only motivation in making contact with Donaldson, and plaintiff has not suggested anything to the contrary; thus, there is absolutely no evidence of a prior hostility likely to bring about a violent encounter. Finally, after this Court inspected *in camera* the personnel records of both Hovanec and Albright it was clear that there was nothing whatsoever of record to even suggest that either Trooper had a history of complaints by citizens suggesting a violent propensity which would suggest the need for preventive measures on the part of a superior or supervisory official. Accordingly, we find and conclude that there is no basis for liability under § 1983 as to the supervisory officials.

We note that plaintiff has already said that she has abandoned her claims under §§ 1985 and 1986, and has not revoked that statement. We note further that there is no evidence whatsoever of conspiratorial conduct prior to the stop. Hovanec's affidavit states that he alone made the decision to order the stop, and that no one else knew of such decision, much less participated in the decision. There is no evidence to contradict this averment by Hovanec, and plaintiff's decision to abandon her conspiracy claims under §§ 1985 and 1986 further suggests that none of the defendants are liable under those sections.

■ Finally, plaintiff purports to state a claim under § 1988. However, § 1988 does not create a remedy, but merely comple-

ments other statutes that do create federal causes of action, furnishing suitable remedies through principles of state law when the federal law is unsuited or insufficient. See *Moor v. County of Alameda,* 411 U.S. 693, 702, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973).

Therefore, there is no basis for liability against any of the supervisory defendants under any of the statutes cited, and we will therefore grant the motions of all supervisory defendants for summary judgment.

## LIABILITY OF HOVANEC AND ALBRIGHT

Plaintiff has alleged that Hovanec violated decedent's constitutional rights in two respects. First, she asserts that the decision to arrest decedent was an unconstitutional deprivation of decedent's rights; second, she claims that the arrest was effectuated through the use of excessive force.

■ Plaintiff also asserts that Albright is liable in that he knew, or should have known, that an unconstitutional arrest was taking place, yet he did not act to prevent said unconstitutional conduct. In this regard, we note preliminarily that as to any action under 42 U.S.C. §§ 1985 and 1986, the facts and reasoning as applied to the supervisory defendants also applies to Hovanec and Albright in this situation. The only evidence at all relevant to a charge of conspiracy establishes that Hovanec determined on his own, without even the knowledge, much less the assistance and approval of Albright, that Donaldson was operating his vehicle at an excessive rate of speed and that it was necessary to apprehend him. Thus, there is no basis for § 1985 or § 1986 liability against either trooper, and plaintiff's statement, as yet unrevoked, that she abandoned her § 1985 and § 1986 claims emphasizes the correctness of this conclusion. Also, as stated earlier, § 1988 does not create a cause of action. Therefore, the only basis for liability against either trooper lies under 42 U.S.C. § 1983.

■ Defendants have, as mentioned, submitted two affidavits by Trooper Hovanec.

Initially, plaintiff contended that such evidence was inadmissable because it was barred by the Pennsylvania Dead Man's Act, 28 P.S. § 322. Subsequently, plaintiff reversed her stand, and has waived her right to assert that statute as a basis of incompetence. Regardless of plaintiff's intention to assert or waive her rights under that Act, we hold that it does not apply to this action. Federal Rule of Evidence 601, General Rule of Competency, provides as follows:

"Every person is competent to be a witness except as otherwise provided in these rules. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the competency of a witness shall be determined in accordance with State law."

In this case, the rule of decision regarding liability of State Police under the federal civil rights acts is clearly one of federal law; therefore, the Pennsylvania Dead Man's Act does not apply. See *Sundstrand Corporation v. Sun Chemical Corporation,* 553 F.2d 1033, 1051 (7th Cir. 1977), *cert. denied,* 434 U.S. 875, 98 S.Ct. 224, 54 L.Ed.2d 155 (1977), in which the court held that the Illinois Dead Man's Act did not bar testimony in a case brought under the Securities Exchange Act.

Furthermore, Pennsylvania courts have held that the Dead Man's Act is inapplicable to a combined action under the Pennsylvania Wrongful Death Act, 12 P.S. § 1601, *et seq.,* and the Pennsylvania Survival Act, 20 Pa.C.S.A. § 3371 *et seq.,* which statutes are analogous to the federal cause of action here alleged and are the basis of the pendent state claims asserted in this case. See *Dennick v. Scheiwer,* 381 Pa. 200, 113 A.2d 318 (1955). Therefore, we conclude that Hovanec is a competent witness and his affidavits are admissable.

In addition to the affidavits of Hovanec, there are in evidence certain photostatic copies of handwritten notes. These documents are accompanied by an affidavit of Matthew Donaldson, Jr., decedent's son and plaintiff's co-counsel, who has sworn that the handwriting is that of the decedent, and that the photostats are of certain handwritten notes that the affiant found among decedent's personal possessions around the time of death. Defendants have not disputed the authenticity of these documents, and we conclude that these documents are recordings of written statements by decedent relating to the circumstances of the arrest in question.

■ We shall now examine the evidence of record in the form of the exhibits submitted by all parties and determine the merits of the motions pending. We note at the outset that defendants, Hovanec and Albright, are entitled to a conditional or qualified immunity. See *Reese v. Nelson, et al.,* 598 F.2d 822 (3d Cir. 1979); *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978). See also *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). As a general proposition, the question of qualified immunity of a state official, such as a state trooper, is a matter of factual resolution, but it is clear that the issue need not always be a jury question. See *Reese v. Nelson, supra,* at page 825. Thus, the Supreme Court in the *Procunier* case affirmed the entry of summary judgment on the basis of qualified immunity, and the United States Court of Appeals for the Third Circuit affirmed summary judgment in favor of defendants in a § 1983 case on the basis of uncontradicted depositions and affidavits establishing good faith. See *Princeton Community Phone Book, Inc. v. Bate,* 582 F.2d 706, 715 (3d Cir. 1978). We shall, therefore, examine the evidence to determine if there is any conflict between the affidavits by Hovanec on the one hand and the notes written by decedent on the other hand as such material pertains to the issue of Hovanec's and Albright's qualified immunity. See *Reese v. Nelson, et al., supra,* at page 825.

■ In evaluating the good faith defense, we are guided by the principles of

*Wood v. Strickland, supra,* as applied by *Princeton Community Phone Book, Inc. v. Bate, supra,* at page 711, that governmental officials enjoy "a qualified immunity shielding them against liability when they act in good faith and reasonably believe their actions are constitutional. Stated differently, to be entitled to such immunity, they must act reasonably and without malice." Moreover, it is not necessary to determine if Hovanec and Albright actually violated decedent's constitutional rights, or if the procedures utilized by the State Police at that time were constitutionally deficient. "As *Navarette* makes clear, the immunity defense should not be rejected if at the time that the act was committed there was no clearly established constitutional right and there was no malicious intention to deprive the plaintiff of a constitutional right or cause him other injury." *Reese v. Nelson, et al., supra,* at page 826.

▮ Plaintiff, as mentioned, has alleged that Hovanec violated decedent's constitutional rights by executing an invalid arrest and by utilizing excessive force in making the arrest. With regard to the first ground, that the arrest was invalid, plaintiff cites three bases for the allegation. (1) She asserts that the arrest was initially a custodial arrest for a minor traffic violation in a situation where the officer had a simple procedure available as an alternative. Instead of a custodial arrest, Hovanec could have filed the citation with the District Justice for service by mail. Plaintiff is thus asking the Court to hold that a custodial arrest inherently violates the Fourth and Fifth Amendments if alternative criminal process is available to the arresting officer. (2) Plaintiff also contends that there is an issue of fact as to whether Hovanec had probable cause to arrest Donaldson for resisting arrest. Whether Hovanec could validly have arrested Donaldson for speeding or not, the arrest for resisting

arrest was a completely separate matter, and as to that charge there was no factual basis. (3) Plaintiff contends that the arrest itself was not to enforce the law, but was the result of Hovanec's objection to Donaldson's language. The motivation of a police officer is a key element to the constitutionality of an arrest. If the arrest is "pretextual", that is, if it appears to be for a traffic violation but is really for an ulterior purpose, such as illegally searching a car, then the arrest is unconstitutional. Here, plaintiff alleges that the arrest was in response to decedent's statement that Hovanec should "take that ticket and clip board and shove them up your ass". *Hovanec affidavit,* ¶ 10.[1] Plaintiff contends that since the arrest resulted from a communication that is protected by the First Amendment, plaintiff has proven a valid § 1983 claim, and defendant now has the burden of showing that the arrest would have occurred even without the protected expression.

▮ In addition to these contentions relating to the invalidity of the arrest, plaintiff contends that the arrest was accompanied by excessive force. If a police officer can perform his duties without the use of force at all, then even the use of minimal force is actionable. This question plaintiff again asserts is a jury question.

Against this set of accusations, we examine first the applicable law, then the evidence. The applicable statute is the Vehicle Code, 75 P.S. § 101, *et seq.,*[2] particularly 75 P.S. § 1214:

"§ 1214. Limitation of authority for Pennsylvania State Policemen

Such employees of the Commonwealth as are designated Pennsylvania State Policemen are hereby declared to be peace officers, and are hereby given police power and authority throughout the Com-

---

1. Plaintiff's decedent's notes indicate a very slight variation in this imperative, that he told Hovanec to "stick it up your ass", obviously referring to the speeding ticket. Clearly, this distinction is of no significance whatsoever.

2. Although the current statute in effect is the Vehicle Code, 75 Pa.C.S.A. § 101 *et seq.,* this Act went into effect in 1977. The provisions referred to in the text are those that were in effect at the time of the arrest and hence are the ones applicable to this case.

monwealth in addition to any other power or authority conferred by law to arrest on view, on Sunday or any other day, when in uniform, without writ, rule, order or process, any person violating any of the provisions of this act.

\* \* \* "

Also pertinent to this action are the provisions of Pennsylvania Rule of Criminal Procedure 51 A:

"Rule 51. Means of Instituting Proceedings in Summary Cases

A. Criminal proceedings in summary cases shall be instituted in the following manner:

(1) Traffic Offenses (Other than Parking)

(a) Except as provided by subparagraphs A(1)(b) and (c), a citation shall be issued to the defendant by a police officer, who shall be in uniform, when the offense charged is a violation of a traffic ordinance or when it is a summary offense under the Vehicle Code; or

(b) A citation (rather than a complaint) shall be filed with an issuing authority by a police officer when the offense charged is a violation of a traffic ordinance or is a summary offense under the Vehicle Code, when the police officer is not in uniform, or when it is not feasible for him to issue a citation to the defendant, or when evidence is discovered after the issuance of a citation which gives rise to additional summary charges against the defendant resulting from the same incident. The issuing authority shall thereupon issue a summons and not a warrant of arrest except as provided in Section B(3) of this Rule. Thereafter, the case shall proceed as provided in Rules 57 and 59; or

(c) For a summary offense under the Vehicle Code, the defendant may be arrested without a warrant only as provided in the Vehicle Code. Thereafter, the case shall proceed as provided in Rule 62."

The evidence we must consider consists in part of an affidavit of Hovanec taken on December 21, 1976 (the Hovanec affidavit) and a supplemental affidavit taken on April 20, 1977 (supplemental affidavit). In these affidavits, Hovanec asserts, *inter alia,* that:

On October 7, 1975, he, operating alone, stopped the Donaldson vehicle because he clocked it on radar at 66 miles per hour (mph), which speed exceeded the legal limit of 55 mph (Hovanec affidavit, ¶¶ 4 and 5);

He began procedure of issuing a citation for exceeding the speed limit (Hovanec affidavit, ¶¶ 8, 9 and 10);

Donaldson refused the citation (Hovanec affidavit, ¶ 10);

Donaldson said to Hovanec, "Let me tell you something, trooper, you can take that ticket and clip board and shove them up your ass". (¶ 10);

Hovanec arrested Donaldson, saying, "I'm sorry you feel that way Mr. Donaldson, you are going to have to come with me to the District Judge". (¶ 10);

In arresting Donaldson, Hovanec touched him lightly on the arm (¶ 10);

Donaldson attempted to strike Hovanec with a closed fist, but Hovanec evaded contact (¶ 10);

Hovanec placed Donaldson against the Donaldson vehicle to make a routine pat down search (¶ 10);

Donaldson again turned around and swung at Hovanec, saying "Get your hands off me, you have no right to take me anywhere". (¶ 10);

Hovanec and Donaldson scuffled against the Donaldson vehicle, where Hovanec secured Donaldson with handcuffs. (¶ 10);

Hovanec then escorted Donaldson to his vehicle without further incident, where he radioed for assistance and was met at the Morgantown Interchange of the Turnpike by Trooper Albright, and they proceeded to District Justice George Wenger's Magistrate Court (¶ 11);

At District Justice Wenger's Court, complaints were issued against Donaldson for speeding and resisting arrest; Donaldson

posted bail, which was accepted; and Donaldson was released (¶¶ 12 and 13); Hovanec and Albright proceeded to return Donaldson to his vehicle, when he complained of chest pains, and requested to be taken to a Doctor; Hovanec immediately proceeded to Reading Hospital, with dome light and siren on, arriving in six minutes; Donaldson's breathing stopped, but was revived by Albright through mouth to mouth resuscitation (¶ 13);

Hospital personnel were outside the Emergency Entrance awaiting the arrival of the Hovanec cruiser as it arrived; Donaldson exited the cruiser on his own, but then collapsed and was taken into Intensive Care (¶ 13);

Hovanec and Albright then resumed their respective patrols (¶ 13);

Prior to that evening Hovanec was not acquainted with Donaldson, had never met or heard of him and bore him no ill will (¶ 6);

Hovanec never attempted to strike Donaldson and used only enough force to secure him (¶¶ 10 and 14);

Hovanec acted in good faith, without malice and treated Donaldson just as he would have treated anyone else under the circumstances (¶ 14);

Hovanec was aware as he acted on his authority to arrest "on view" a person in violation of the Vehicle Code and was aware of occasions where troopers had effected such arrests (Supplemental affidavit ¶¶ 15 and 16);

Hovanec believed that the arrest was proper (Supplemental affidavit ¶ 17).

We also consider the personal notes of the decedent made that night that have been submitted by plaintiff. They read as follows:[3]

> "Page 1 – Upper Dublin H.S. Did Ward's sell them a Wadde Display Case sitting in closet of Auditorium Entrance. MSD
>
> Page 2 – Birdsboro Boro Justice of Peace George Wenger 215 – 582 – 8615 Stopped – 66 miles an hour giving me a ticket I told him he could stick it He grabbed and before I knew what was happening he turned me around
>
> Page 3 – and told me to put my hands on the hood – like on TV – he began to search (?) me for deadly weapons, I guess – I never touched him – period. He snapped the cuffs on me and pulled them tight – I then had to get into the car and he drove me to the
>
> Page 4 – exit 22 *Morgantown* where there were two other troopers – in order to get comfortable I stretched my rt. leg up over the seat and he says "look at him" to the other two officers – he then cleaned out the back seat of the radio equip and one of the other officer rode over with us to *Birdsboro*.
>
> Page 5 – I had been driving 62/60 miles an hour all the time and I was tired – debating whether to stop – and I must have drifted off – *Model TR–6 Single*
>
> Page 6 – *Joseph Havianic Never tender it to me* Friday October 18th 10 o'clock Asked him a question are you going to give me a ticket – stick it up your ass?"

We examine these exhibits to determine if there is an issue of material fact as to whether Hovanec acted reasonably and without malice. Regarding the allegation that the arrest was improper, plaintiff is asking this Court to hold that a custodial arrest cannot be constitutionally effected pursuant to 75 P.S. § 1214 and Pa.R.Crim. Pro. 51 A(1)(c) if alternative processes are available pursuant to Rule 51 A(1)(a) or (b). To impose liability upon Hovanec on that basis would fly in the face of the teachings

---

**3.** This recording of the contents of the notes is from a transcript furnished by decedent's son and plaintiff's co-counsel, Matthew Donaldson, Jr. Defendants have not contested this reading of the notes and the Court can find no errors in the transcript, and therefore deems this transcript an accurate reading of the handwritten notes of the decedent.

of *Reese v. Nelson, supra,* and the cases upon which it relies. *Reese* dealt with a contention by a plaintiff that the defendants therein should be found liable for invoking the Pennsylvania Mental Health and Mental Retardation Act, and held that verdicts should have been directed for defendants because there was no evidence or contention that at the time of the application of the Act any section thereof was considered clearly unconstitutional. *Id.* at pages 609–610. Likewise, here, when Hovanec enforced the provisions of 75 P.S. § 1214 and Rule 51 A(1)(c) there was and there is no holding that use of the Rule 51 A(1)(c) procedure constitutes or constituted a violation of a constitutional right when Rule 51 A(1)(a) and (b) procedures were available in the alternative. Therefore, it is clear that in 1975, decedent Donaldson did not have a clearly established constitutional right to be subject to the provisions of Rule 51 A(1)(c), involving a custodial arrest, only when the procedures established in Rule 51 A(1)(a) and (b) were not available. Moreover, the Rule itself is understandably disjunctive, allowing for choice among its alternatives and establishing no exhaustion of alternatives requirements and calling for no priority in invoking any of its sections. This fact, coupled with Hovanec's statement that he was aware of his authority under these provisions, compels this Court to conclude that Hovanec cannot be found liable for not utilizing Rule 51 A(1)(a) or (b) in lieu of the provision in Rule 51 A(1)(c).

■ Plaintiff's second contention, that there was no probable cause to arrest decedent for resisting arrest, must again be examined in light of the two-step *Wood v. Strickland* test, as applied by the Court in the *Princeton Community Phone Book* case, that a State Trooper is entitled to a conditional immunity if he acted reasonably and in good faith. In the case before us, it is undisputed that decedent told Hovanec to shove or stick the ticket to which Hovanec responded "I'm sorry you feel that way Mr. Donaldson". It is clear that Hovanec reasonably inferred that Donaldson had no intention of accepting the citation based upon this profane imperative and Donaldson's

earlier course of conduct: i. e., his statement that he was a salesman and needed his driver's license, and his refusal to return to his vehicle while Hovanec wrote the citation (Hovanec affidavit, ¶ 9). These facts, which are not contradicted, and the total absence of any suggestion, indication or statement by decedent in his own notes that he did intend to accept and comply with the citation and manifested such an intent to Hovanec, compels the conclusion that Hovanec's determination that decedent was not going to comply with the citation requirements and that probable cause existed for an arrest for resisting arrest was not unreasonable, and that his actions do not in and of themselves suggest malicious intent. In reaching this conclusion, we are guided by the Supreme Court's statement in *Gerstein v. Pugh,* 420 U.S. 103, 113–114, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) that "(A) policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest."

■ Plaintiff's third contention, related to the second, is a more concerted attack on Hovanec's motivation. Plaintiff contends that Hovanec arrested Donaldson not because Donaldson resisted arrest, but because Hovanec did not like what Donaldson said, that is, that Hovanec should shove or stick the ticket "up (his) ass". Plaintiff contends that it is a jury question as to what the true motivation of Hovanec was when he arrested Donaldson.

Hovanec has asserted that he discharged his duties in good faith, without malice to Donaldson, and with knowledge of his statutory authority. His assertions are not controlling; extrinsic evidence may indicate a contrary motive on the part of Hovanec. However, these assertions by Hovanec, though not controlling, *are evidence,* and plaintiff, to avert summary judgment, must refute this evidence with *other evidence,* not mere conclusory remarks by counsel, as F.R.C.P. 56(c) and (e) make clear:

"(c) Motion and Proceedings Thereon.

    *     *     *     *     *     *

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, *together with the affidavits,* if any, show that there is no *genuine* issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. * * *

\* \* \* \* \* \*

(e) Form of Affidavits; Further Testimony; Defense Required. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissable in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. * * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the *mere allegations or denials in his pleading,* but his response, by *affidavits or as otherwise provided in this rule,* must set forth *specific facts showing that there is a genuine issue for trial.* If he does not so respond, summary judgment, if appropriate, shall be entered against him." (Emphasis added.)

This Court must determine if the plaintiff, in opposing this motion for summary judgment, has, by the evidence submitted in the form of decedent's handwritten notes as transcribed in the affidavit of Matthew Donaldson, Jr., "set forth specific facts showing that there is a genuine issue for trial".

The notes of the decedent do not contradict the Hovanec affidavit. They do not state, imply or suggest that Donaldson was being punished for his language or that he even thought or suspected as much. Donaldson never wrote that he protested compliance with the citation, yet he could have done so if he had made such a protest. Donaldson's notes do not suggest that it was his desire to comply, even if he did not protest. What Donaldson does say is that Hovanec could "stick it", but does not say that he in no way meant for that phrase to be interpreted as an act of defiance. Hovanec's statement, "However, Mr. Donaldson

refused to accept the citation, stating 'Let me tell you something trooper, you can take that ticket and clip board, and shove them up your ass' ", is partially *corroborated,* in that Donaldson admitted telling the trooper to stick it, but is no way contradicted; Donaldson never says or even suggests that the statement was not a refusal to accept the citation or at least something in the nature of a protest or refusal.

Also, Hovanec quotes himself as having reacted by saying, "I'm sorry you feel that way . . ." Such a statement indicates that Hovanec was reacting to Donaldson's *attitude,* to the way he felt, not to what Donaldson *said.* Hovanec did not quote himself as saying "I'm sorry you said that" or "You'll be sorry you said that" or any other phrase indicating that it was the choice of words that upset Hovanec. Significantly, Donaldson *likewise* imputes no such statement to Hovanec. After quoting himself as saying he told the trooper he could stick it, Donaldson does not quote Hovanec as saying anything menacing or hostile, such as "You'll be sorry you said that". Donaldson clearly paid attention to what remarks Hovanec did make that struck him as significant; hence, he quotes Hovanec as saying "Look at him" to the other two troopers. Yet Donaldson does not suggest that anything was said by Hovanec with respect to Donaldson's language when Donaldson told Hovanec to stick it. Thus, the facts asserted by Hovanec, that Donaldson refused the citation, that Donaldson told Hovanec to stick it, and that Hovanec said "I'm sorry you feel that way" are not contradicted, and as to these significant facts there is no genuine issue.

Plaintiff contends that the phrase "Never tender it to me" as used by decedent in his notes is an indication that Hovanec never asked Donaldson to accept the citation and, therefore, Donaldson could not have refused the citation. Plaintiff then infers an issue of fact: that Hovanec is saying that he requested Donaldson to accept the citation when Donaldson told him to "stick it" whereas plaintiff is contending that the statement was during the explanation of

procedures by Hovanec. We conclude that in so contending plaintiff is clearly wrong. Hovanec does not assert in his affidavit that he requested Donaldson to accept the citation or that he tendered the citation to Donaldson. Hovanec says he completed the citation, was explaining the procedures to Donaldson, and was interrupted by Donaldson's command to "stick it". Quite obviously, according to Hovanec's version of the facts, he never reached the point of tendering the citation to Donaldson. Donaldson refused the citation, via his command to "stick it", *before* the moment of tender of the citation, in fact before Hovanec completed his explanation of procedure. Consequently, Donaldson's statement "Never tender it to me" is not a contradiction of Hovanec's factual assertions, and there is still no genuine issue as to the material facts asserted by Hovanec.

Plaintiff also points to other statements made by Hovanec as indicating an issue of fact as to time sequence. Plaintiff quotes Hovanec as saying in his Initial Crime Report that " * * * when I attempted to explain the proper procedure that must be followed, the Actor (sic) interrupted me, stating * * *" and likewise plaintiff quotes Hovanec as saying in his report to his Commanding Officer, "I then returned to the defendant with my completed traffic citation, and proceeded to explain it, when DONALDSON stated * * *". Plaintiff, as mentioned, inferred from these statements and from the Hovanec affidavit that Hovanec was attempting to say that he requested Donaldson to accept the citation, which would be contradictory to Donaldson's phrase "Never tender it to me". However, such statements by Hovanec, consistent as they are with his affidavit, do not in any way imply that Hovanec requested Donaldson to accept the citation; they suggest just the opposite. It is quite clearly Hovanec's contention that he never reached the point of tender when he was interrupted by Donaldson. Thus, Hovanec's version of the incident is in fact consistent with the phrase "Never tender it to me".

Plaintiff further asserts that it is obvious that if Hovanec never requested Donaldson to accept the citation that Donaldson could not have refused it. That assertion is not only *not* obvious, it is not even logical. Hovanec had told Donaldson he was going to issue a citation; Hovanec had a document in his hand when he was explaining procedures to Donaldson; Donaldson was a citizen of normal common sense and experience. Quite obviously, Donaldson anticipated that tender of the citation was imminent, and reacted to this imminent tender by ordering Hovanec to "stick" the citation; that is the undisputed factual situation asserted by Hovanec.

Finally, plaintiff asserts that the Donaldson language "I told him he could stick it. He grabbed * * *" indicates that the custodial arrest was a sudden response to decedent's language. In keeping with everything we have said up to this point, we conclude that *that* language is a further indication that Hovanec's version of the incident is, if not corroborated, at least uncontradicted by Donaldson's notes, in that Hovanec was explaining the procedure and was about to tender the citation to Donaldson; Donaldson told Hovanec to "stick it"; Hovanec, deeming this an anticipatory refusal of the citation, arrested Donaldson. This version remains uncontradicted by any evidence submitted by plaintiff. Hovanec's contentions that he acted in good faith and in awareness of his statutory authority likewise remain uncontradicted, since the evidence submitted by plaintiff does not indicate that Hovanec's motive was to arrest Donaldson because of his profanity, and Hovanec's statement that Donaldson refused the citation remains uncontradicted. Having painstakingly analyzed all of the evidence in light of the defense of qualified immunity and finding conduct that is reasonable and in good faith, this Court is compelled to conclude that Hovanec cannot be found liable because he executed an invalid arrest that lacked probable cause.

■ We now determine whether the arrest, though valid, was executed with excessive force. It is Hovanec's contention that he "lightly touched" Donaldson when

he first told Donaldson that he, Donaldson, was under arrest; that Donaldson attempted to strike Hovanec with a closed fist; Hovanec evaded the attempt; Hovanec placed Donaldson against the Donaldson vehicle to make a routine pat down search; Donaldson again took a swing at Hovanec, saying, "Get your hands off me, you have no right to take my anywhere"; Donaldson and Hovanec scuffled against the vehicle; Hovanec secured Donaldson with handcuffs. Hovanec affidavit, ¶ 9. Donaldson describes the incident in his notes as follows: "He grabbed and before I knew what was happening he turned he around and told me to put my hands on the hood—like on TV—he began to search (?) me for deadly weapons, I guess,—I never touched him—period. He snapped the cuffs on me and pulled them tight—I then had to get into the car and he drove me to the exit 22 * * *". Matthew Donaldson, Jr. Affidavit, ¶ 18.

Plaintiff contends that this evidence gives rise to a jury question of whether or not the arrest was accomplished with excessive force. To buttress this argument, plaintiff avers that the phrase "I told him he could stick it. He grabbed * * *" indicates that Hovanec, contrary to his affidavit, responded suddenly to the language of Donaldson and initiated the use of force. Plaintiff also avers that the express statement, "I never touched him—period" and a fair reading of decedent's notes indicates that Donaldson had no opportunity to attempt to use force.

Plaintiff also contends that statements made by Hovanec at various times are "expressly dissimilar" and create fact issues. In his affidavit, Hovanec stated that Donaldson attempted to hit Hovanec with a closed fist; in the complaint sworn before the Magistrate, Hovanec alleged that Donaldson tried to "shove" him; in this § 1983 proceeding, Hovanec has alleged that a 60-year old man attempted futilely to swing at him and he only used minimal force to handcuff Donaldson; Hovanec's statement in the criminal proceeding suggested that Donaldson created "a substantial risk of bodily injury" and that "substantial force" was needed. It is contended that these contradictory or inconsistent statements in and of themselves create a fact issue.

Taking these contentions one at a time, we examine the evidence to determine if issues of fact do arise, and if such issues are issues of *material* fact. At the very outset we note that Hovanec has stated that on two occasions Donaldson tried to hit him. These assertions are never contradicted. Donaldson's statement "I never touched him—period" is simply not a statement that Donaldson never *tried* to hit him. Plaintiff's contention that this phrase by Donaldson indicates that Donaldson had no opportunity to use force is simply unfounded and illogical, because Donaldson never wrote "I never tried to him him" or anything of that sort. All he said was "I never touched him—period". That statement actually confirms Hovanec's statement that he, Hovanec, evaded contact. More importantly however, neither that statement nor any other contradicts Hovanec's factual averment that Donaldson tried to hit him. Thus, there is no genuine issue as to this material fact.

Plaintiff's contention that Donaldson's statement "he grabbed me and before I knew * * *" indicates that Hovanec initiated the use of force is simply contrary to the evidence now on record. All the evidence must, of course, be read together for a true understanding of the facts as they are averred. Hovanec's description of the sequence of events is that he lightly touched Donaldson, Donaldson tried to hit him, and Hovanec then placed Donaldson against the car for a pat down. Donaldson's statement is that "He grabbed me and before I knew what was happening he turned me around". That statement by Donaldson is referring to contact by Hovanec that was so contemporaneous with the pat down that before Donaldson knew what was happening, Hovanec was placing him against the vehicle. The only reasonable conclusion is that Donaldson was NOT referring to the contact made by Hovanec before Donaldson tried to hit Hovanec, which Hovanec described as a light touching; Donaldson instead was referring to the

contact by Hovanec *after* Donaldson tried to hit Hovanec which Hovanec described as having "proceeded to place Mr. Donaldson against the vehicle". This conclusion is compelled by the very language of Donaldson himself, that he was "grabbed" and "before he knew what was happening" he was placed against the car; such a description is of contact contemporaneous with the pat down, and that would have to be the placement against the vehicle. Reading everything together, Donaldson is not contradicting Hovanec's description of a light touching and is not alleging that Hovanec initiated contact; what he said was that at some point he was grabbed and very promptly placed against the vehicle for a pat down. This does not contradict any of Hovanec's averments as to the sequence of events. There remains no genuine issue of fact as to Donaldson's attempts to hit Hovanec, because Hovanec's assertions that Donaldson made such attempts have not been contradicted by anything on the record.

Plaintiff also argues that Hovanec's statements are self-contradictory. To this end, plaintiff contends that on the one hand, Hovanec has made statements that Donaldson tried to hit him, that Donaldson did shove him, and that only minimal force was needed to handcuff Donaldson. On the other hand, in the complaint before the Magistrate, Hovanec stated that there was "a substantial risk of bodily injury" and that "substantial force" was needed to subdue Donaldson. These are not factually contradictory statements at all. First, there is not even an arguable contradiction between the statement that "minimal force" was needed, and that there was substantial risk of bodily injury. Prior to the pat down, Hovanec had no way of knowing if Donaldson was armed with a deadly weapon. Despite the disparity in physical prowess between the two men, Donaldson might have been able to seize Hovanec's firearm even if Donaldson was not armed, or he might have given Hovanec one big push, caused Hovanec to lose his balance and stumble into the path of a high speed vehicle as this incident did occur at the side of a high speed highway. The occurrence of these and like incidents are not unusual in the everyday life and experience of arresting officers. Therefore, the disparity in physical strength between the men was not any sort of guarantee that Donaldson's conduct did not place Hovanec in danger or potential danger.

Plaintiff also contends that Hovanec's statement that "minimal force" was needed to subdue Donaldson (Hovanec affidavit ¶ 14) is a contradiction of his prior statement in the criminal complaint that "substantial force" was required to overcome the resistance. This is not a material contradiction and, indeed, may not even be a contradiction at all. Instead, Hovanec was giving two differing descriptions of the same phenomenon in two different contexts. In the context of the Magistrate Court, Hovanec indicated substantial force was needed because he was required to completely overpower Donaldson and completely constrict Donaldson's freedom of movement. However, in the context of a § 1983 action alleging brutality, Hovanec indicated the force was minimal, because he needed only his own physical strength to control Donaldson, and did not require any extraordinary—and dangerous—procedures, such as drawing, brandishing or discharging his firearm, nor was he required to strike the decedent with a fist, night stick, pistol butt or other instrument. Relative to a normal traffic stop in which the motorist is usually cooperative, the force utilized by Hovanec to subdue Donaldson was substantial; relative to some physical encounters between police officers and suspects, in which violent force is sometimes used, the force utilized by Hovanec was minimal. This variation is not material, if, indeed it is a contradiction.

The uncontradicted evidence, properly analyzed, leads to one conclusion: that Donaldson told Hovanec he could "stick" the ticket before Hovanec completed his explanation of procedures and attempted tender of the citation; Hovanec arrested Donaldson; Donaldson tried to hit Hovanec; Hovanec placed Donaldson against the car for

a pat down search; Donaldson tried again to hit Hovanec; Hovanec secured Donaldson with handcuffs. These facts, after all of the extensive briefings and arguments by counsel, remain asserted and uncontradicted, even though the notes by Donaldson could well have contained contradictory facts and statements if same existed. It bears repeating: Donaldson denied striking Hovanec ("I never touched him—period") but never denied *trying* to strike Hovanec.

Having examined the material facts to which there is no genuine issue, we are compelled to conclude that Hovanec was justified in making the arrest. Furthermore, in utilizing a pat down search, Hovanec did not exert excessive force, since this was not an application of force that "exceeds that which is reasonable under the circumstances, and also 'violates standards of decency more or less universally accepted,'" *Howell v. Cataldi,* 464 F.2d 272, 282 (3d Cir. 1972). See also *Reed v. Philadelphia Housing Authority,* 372 F.Supp. 686 (E.D.Pa.1974); *Everett v. City of Chester,* 391 F.Supp. 26 (E.D.Pa.1975). In reaching this conclusion, we observe that plaintiff has submitted all of the evidence that she can possibly submit under any circumstances. Only two persons witnessed the incident. One is Hovanec, who has up to this point furnished only evidence that consistently indicates he did not violate decedent's constitutional rights. The other witness was decedent himself, who quite obviously can furnish no more evidence other than the notes which in and of themselves do not refute Hovanec's affidavits. If summary judgment were denied under these circumstances, we would be faced with an extended trial, and then be faced with the appellate court admonition that "* * * the trial judge should * * * have directed verdicts for the defendants." *Reese v. Nelson, et al., supra,* at p. 825. In the alternative, if after hearing Hovanec give the testimony he has furnished through his affidavits and after viewing the decedent's notes, the jury were to hold for plaintiff, we would be compelled to conclude that such a verdict would be contrary to the weight of the evidence and the law.

Accordingly, we find no basis for liability against Hovanec exists, and his motion for summary judgment will be granted. Because Hovanec's conduct was proper, there quite clearly is no basis for liability against Albright, and his motion will also be granted.